IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:25-cv-00674 |
| v. | ) |
| | ) |
| PITTSBURGH HOUSING AUTHORITY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER GRANTING IN FORMA PAUPERIS
STATUS AND DISMISSING ACTION WITH LEAVE TO AMEND**

Before the Court is Plaintiff John Doe's Complaint, along with Motions for Protective Order, for Declaratory Relief, to Proceed Under Pseudonym, to Compel, and for Preliminary Injunction. Doe seeks to proceed *pro se* with *in forma pauperis* ("IFP") status. The Court will grant IFP status in this case. Under 28 U.S.C. § 1915(e)(2), the Court screens a Complaint filed IFP to determine if it states a claim under Fed. R. Civ. P. 12(b)(6). Pro se pleadings are construed liberally, but the action must be dismissed if it fails to state a claim upon which relief can be granted. *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021). The Court has evaluated Doe's Complaint and the appended filings, and concludes that the action must be DISMISSED WITHOUT PREJUDICE. Doe's miscellaneous motions for relief are similarly DISMISSED WITHOUT PREJUDICE, with leave to refile should an Amended Complaint state a claim. The Court will grant Doe one opportunity to amend in order to correct the deficiencies identified herein. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

**FACTUAL BACKGROUND**

The facts are taken from the averments of Doe's papers of record. Doe suffers from a number of mental health conditions that qualify as disabilities under federal law, including

HIV/AIDS, anxiety, ADHD, bipolar 2 disorder, PTSD, depression, and schizophrenia. In June 2024, he applied for housing assistance through the Pittsburgh Housing Authority's ("PHA") Low Income Public Housing program. On June 10, 2024, a PHA employee told him the waiting list was closed except for housing in high rises for elderly or disabled individuals. Because Doe is disabled, he alleges that he should have received assistance in applying for the high rise waiting list. On the same day, the same PHA employee advised him that he could instead could apply for a two-bedroom unit if he had two people on his application, and Doe chose to submit a revised application for a two-bedroom unit with his mother as the second occupant on June 14.

A few weeks later, on July 5, Doe contacted PHA to inquire about the status of his application. PHA told him that he should be receiving an application packet in the mail. Doe alleges he never received that packet. He called the PHA again on August 21, and was told that his application had been withdrawn on July 29 for failure to submit documentation. In addition to the application packet that Doe says that he never received, he says he never received a letter, which PHA told him was sent on July 11, requesting additional documentation.

After his initial failure to get results with the PHA, Doe "contacted nearly every known public agency in Allegheny County with a plausible link to housing assistance" to try to gain access to benefits via the Housing Opportunities for Persons With Aids ("HOPWA") program. He alleges he was systematically obstructed in his attempts to do so—agency representatives said they were unfamiliar with the program and/or directed him to other agencies, and he was ultimately never told how to apply for benefits. He resorted to calling the Pennsylvania Department of Health, which he says did not pick up the phone or respond to his voicemails.

After these other efforts to secure grant funding or housing failed, Doe sent a formal demand letter to the PHA on August 25, 2024 that requested reinstatement of his application to a

priority position on the waiting list. On August 26, 2024, the PHA told him they were conducting an investigation and would advise him once that investigation was complete. On September 5, the PHA notified Doe that his application status had changed because he had removed his mother from the application and was no longer eligible to be on the waiting list for a two-bedroom unit; he had therefore been moved to the waiting list for communities with one-bedroom units. Doe says this response does not explain why he went from thirty-fourth to over three-hundredth on the waiting list. He filed a complaint about the PHA with HUD on September 12; HUD closed the complaint on October 9 because they determined that the issues alleged were program issues rather than violations of the Fair Housing Act.

In October, Doe tried once again to access supportive housing services, this time through the McKeesport Housing Authority. When he called to asked about the "811" grant program, funded by HUD, the McKeesport Housing Authority told him they did not administer the program. He was advised that a referral or recommendation from the Allegheny County Executive's Office could help him access the HUD 811 program. No one, however, helped him gain such a referral. Doe believes that one of the many agencies he was in contact with should have been able to help him, at least via referral, web link, or phone number to connect with a person who could help him. He further believes that the various agencies he spoke with should have been able to coordinate to help him access services and provide continuity.

**LEGAL ANALYSIS**

Doe's Complaint alleges six counts: violation of the Fair Housing Act ("FHA"), violation of the Americans with Disabilities Act ("ADA"), violation of the Section 504 of the Rehabilitation Act ("RA"), one count for various deprivation of constitutional rights under 42 U.S.C. § 1983,

3

violation of the Pennsylvania Human Relations Act ("PHRA"), and violation of the Administrative Procedure Act ("APA").

To be sure, Doe's allegations, taken as true, could demonstrate failures on the part of government agencies in administering the programs from and through which Doe sought aid. However, that does not mean that any such failures were in violation of federal law. No count asserted successfully states a claim that the relevant statute or one of Doe's constitutional rights was violated. Further, many Defendants identified by Doe benefit from various forms of immunity, which Doe's allegations are insufficient to overcome.

   a. *Discrimination under the FHA, ADA, RA, and PHRA (Counts I, II, III, and V)*

For claims of discrimination, Doe must allege factual material showing that he was treated differently from those similarly situated, and his disability status was a motivating factor in that treatment. "To 'discriminate against' a person . . . mean[s] treating that individual worse than others who are similarly situated." *Bostock v. Clayton County*, 590 U.S. 644, 657 (2020). This fundamental principle applies to each of the statutes that Doe says were violated by the Defendants. *See Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 178 (3d Cir. 2005) (FHA claim requires a plaintiff to "demonstrate that defendant's alleged discrimination was 'because of a handicap'" (quoting 42 U.S.C. § 3604(f)(2)); *C.G. v. Pennsylvania Dept. of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) ("To prove a claim under either the ADA or RA, Plaintiffs must show that: . . . they were precluded from participating in a program or receiving a service or benefit because of their disability."); *Berardelli v. Allied Servs. Inst. of Rehab. Medicine*, 900 F.3d 104, 126 (3d Cir. 2018) ("[T]he liability standard for the PHRA and the ADA is the same.").

Doe alleges that various housing agencies denied him their services, but does not allege any facts indicating that such denial was "because of" his disability status. Doe's various medical conditions indicate that he is disabled, but the fact of disability alone does not give rise to an

4

inference of disability discrimination without more. *Drummer v. Trustees of Univ. of Penn.*, 286 F. Supp. 3d 674, 683 (E.D. Pa. 2017). As to the FHA, these disabilities entitle him to "equal opportunity" in the administration of housing programs; they do not entitle him to any different opportunity than other applicants or to housing. *See Lapid-Laurel, LLC v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 460 (3d Cir. 2002).

With respect to the ADA, RA, and PHRA, Doe has not alleged that he was precluded entirely from participating in the PHA's low-income housing program, nor that his participation was limited by his disability. Instead, he alleges that he is too far down the waiting list without any connection to his disability plausibly asserted or evident. A long waiting list may be evidence that the low-income housing stock made available by the PHA is insufficient to meet demand, but it does not indicate that Doe was unable to access the benefits of the program because of his disabilities. The same is true of Doe's allegations relative to the other organizations that Doe attempted to contact: Doe had difficulty accessing the programs, but does not plausibly allege that the difficulty was the result of his disabilities. While it may reflect programming failures on the part of these agencies, there are not facts that indicate their failures are specifically targeted at Doe, nor that they were motivated in any part by Doe's disabilities.

On the Complaint as it stands, the Court cannot conclude that it has been plausibly shown that any Defendant was motivated to treat Doe differently because he is disabled. Doe may amend to allege facts demonstrating that he was treated differently than other applicants to the programs at issue here, or that discriminatory animus was otherwise a motivating factor for the various agencies with which he was in contact. Counts I, II, III, and V are therefore DISMISSED WITHOUT PREJUDICE.

b.  *Deprivation of Constitutional Rights under § 1983 (Count IV)*

Doe alleges that various defendants deprived him of certain constitutional rights under 42 U.S.C. § 1983. He alleges equal protection and due process violations, as well as re-alleging the violations of statutory protections against discrimination, which are already addressed above.

A violation of equal protection requires a plaintiff to allege (and ultimately prove) "the existence of purposeful discrimination." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) (quoting *Andrews v. City of Phila.*, 895 F,2d 1469, 1478 (3d Cir. 1990)). To do so, they must allege "that they received different treatment from that received by other individuals similarly situated." *Id.* (cleaned up). Doe's equal protection claim therefore contains the same flaw as his various statutory claims: he does not allege that he was treated differently, nor that any differential treatment was the result of animus towards those with disabilities.

As to Doe's due process claim, he says he was denied procedural due process when he was unable to access housing services programs. A person can claim the protections of due process when they are deprived of life, liberty, or property. *Chavarriaga v. New Jersey Dept. of Corrs.*, 806 F.3d 210, 225 (3d Cir. 2015). When a life, liberty, or property interest is not implicated, the due process clause is not implicated either. *See Javitz v. Cnty. of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019). Doe says that he has a "legitimate claim of entitlement" to housing programs under *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), and thus that his access to housing program is protected by procedural due process. But Doe's right to participate in federally funded housing program does not go beyond the "unilateral expectation" of access that does not create a protected property interest. *Id.*; *cf. Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1397 (3d Cir. 1991) (distinguishing between potentially protectable interests of enrolled

students and unprotected interests of prospective students). Without mutuality or the actual disbursement of government benefits, procedural due process is not implicated.

Further, individual government employees in suits for money damages are entitled to qualified immunity unless they are "plainly incompetent" or "knowingly violate the law." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007) (quoting *Couden v. Duffy*, 446 F.3d 483, 501 (3d Cir. 2006) (Weis, J., dissenting)). The various individual defendants Doe names are all alleged to be employees of government agencies acting under color of state law. Doe does not state a claim for a violation of his constitutional rights, as described above. But for Doe to overcome qualified immunity as to these individual defendants and ultimately hold them liable, any amended complaint must establish both that a right was violated and that right was "clearly established such that it would have been clear to a reasonable person that [their] conduct was unlawful." *Williams v. Sec'y Pa. Dept. of Corrs.*, 848 F.3d 549, 557 (3d Cir. 2017).

Thus, Count IV is DISMISSED WITHOUT PREJUDICE. Doe may amend his complaint to correct these deficiencies.

    c.   *Violation of the Administrative Procedure Act (Count VI)*

Finally, Doe alleges that HUD violated the APA when they administratively closed his complaint because he alleged programmatic issues and not violations of the FHA. Those who are "aggrieved" by allegedly discriminatory housing practices may file an administrative complaint with HUD. 42 U.S.C. § 3610(a)(1)(A)(i). HUD conducts an investigation, and if they find a reasonable basis for the complaint, it brings a charge on behalf of the aggrieved person. *Id. see Am. Disabled for Attendant Programs Today v. Dept. of Hous. & Urb. Dev.*, 170 F.3d 381, 387-88 (3d Cir. 1999). In Doe's case, HUD administratively closed his complaint after determining

that "the issues you alleged in your complaint are program issues, not violations of the Act." (ECF No. 1-1, at 32).

Doe says that HUD's reasoning was arbitrary and capricious, as well as an abuse of discretion. *See* 5 U.S.C. § 706(2)(A). All that is required is that "agency action be reasonable and reasonably explained. . . . A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Proj.*, 592 U.S. 414, 423 (2021). HUD's decision here, especially in context of the facts alleged by Doe to this Court, was not arbitrary and capricious on that standard. While "a court may not substitute its own policy judgment for that of the agency," *id.*, the Court here agrees with HUD's evaluation of the relevant facts. There is no indication that HUD failed to execute its responsibilities under the APA to evaluate Doe's complaint and provide him with the reasons for its closure.

The APA allows judicial review of final agency action, but does not waive sovereign immunity as to individual government employees. *See* 5 U.S.C. § 705. Thus, it would be futile for Doe to amend his complaint to restate this Count against any individual defendants. Count VI is DISMISSED WITHOUT PREJUDICE as to the Department of Housing and Urban Development, but DISMISSED WITH PREJUDICE as to Defendants Bianca L. Graham and R. Colon.

**CONCLUSION**

For the reasons and on the bases above, the Court will GRANT Mr. Doe's Motion to Proceed IFP, but the majority of his claims will be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2). The claims against Defendants Graham and Colon will be DISMISSED WITH PREJUDICE. Doe's various Motions for miscellaneous relief will be DISMISSED WITHOUT PREJUDICE. Doe may file an amended Complaint within twenty-one

(21) days of the date of this Order. If no amended Complaint is filed within twenty-one (21) days, any dismissal without prejudice will be converted to a dismissal with prejudice without further Notice or Order.

                                         s/ Mark R. Hornak  
                                         Mark R. Hornak  
                                         Chief United States District Judge

Date: June 27, 2025